1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Docket No. 18 CR 35 |
| | ) | |
| Plaintiff, | ) | Chicago, Illinois |
| | ) | August 13, 2020 |
| v. | ) | 9:30 a.m. |
| | ) | |
| JAMES VORLEY and CEDRIC CHANU, | ) | |
| | ) | |
| Defendants. | ) | |

TRANSCRIPT OF PROCEEDINGS - Telephonic Status
BEFORE THE HONORABLE JOHN J. THARP, JR.

APPEARANCES:

For the Government:    MR. AVI PERRY
                      MR. BRIAN R. YOUNG
                      United States Department of Justice
                      Criminal Division, Fraud Section
                      1400 New York Avenue NW
                      Washington, DC 20530


                      MS. LESLIE S. GARTHWAITE
                      United States Department of Justice
                      Criminal Division, Fraud Section
                      219 S. Dearborn Street
                      5th Floor
                      Chicago, IL 60604


For Defendant         MR. ROGER A. BURLINGAME
Vorley:               Dechert LLP
                      160 Queen Victoria Street
                      London, UK EC4V 4QQ


                      MR. MATTHEW L. MAZUR
                      Dechert LLP
                      Three Bryant Park
                      1095 Avenue of the Americas
                      New York, NY 10036

APPEARANCES (Cont'd.):


For Defendant          MR. MICHAEL G. McGOVERN
Chanu:                 MS. HELEN GUGEL
                       Ropes & Gray LLP
                       1211 Avenue of the Americas
                       New York, NY 10036


                       MR. AARON M. KATZ
                       Ropes & Gray LLP
                       Prudential Tower
                       800 Boylston Street
                       Boston, MA 02199


Also Present:          MR. JAMES VORLEY
                       MR. CEDRIC CHANU


Court Reporter:        LAURA R. RENKE, CSR, RDR, CRR
                       Official Court Reporter
                       219 S. Dearborn Street, Room 1224
                       Chicago, IL 60604
                       312.435.6053
                       laura_renke@ilnd.uscourts.gov

(In open court.)

(Judge places telephone call.)

THE COURT: All right. Good morning. This is Judge Tharp. This is a telephone status in United States v. Vorley and Chanu, Case No. 18 CR 35.

Do we have counsel for the United States on the line?

MR. PERRY: We do, your Honor. Good morning. It's Avi Perry here, joined by Brian Young and Leslie Garthwaite.

THE COURT: All right. Good morning.

Do we have counsel for Mr. Vorley?

MR. BURLINGAME: Yes. Good morning, Judge. It's Roger Burlingame. I'm joined by Matthew Mazur, and Mr. Vorley is on the line as well.

THE COURT: All right. Good morning.

And counsel for Mr. Chanu.

MR. McGOVERN: Yes. Good morning, your Honor. Mike McGovern on behalf of Mr. Chanu. I believe my partner Aaron Katz and our colleague Helen Gugel are on as well, as is Mr. Chanu. Good morning.

THE COURT: Good morning.

All right. Is there anyone else on the line who anticipated participating in the hearing, or anyone else we're waiting on?

All right. I'll remind everyone again. This is a telephone status hearing. Please remember to identify

yourselves each time you speak so that our court reporter can be sure that we're attributing statements to the correct party.

I'll start off very briefly, and then we'll see what other issues need to be addressed.

The -- I wanted to give you a brief update in terms of how the initial jury trials that have been conducted in this district went last week. And I'm happy to report that they went off really without any significant problems at all.

One was a criminal trial. One was a jury trial.

We had very good response from jurors who were summoned. There were no issues with people not showing up, nor did we have any issues during the course of jury selection in the trial in terms of -- you know, in addition to the laundry list of issues that could come up, nothing particularly related to the COVID situation.

The jury pool had been prescreened. Letters had gone out, you know, soliciting information from any individuals who believed that they had any COVID-related concerns or reasons that they were seeking to defer their jury service. And so most of those issues were addressed by the Court in advance of jury selection, and there were very few issues that arose during the course of jury selection as a result.

Couple of other things, just to confirm. I can confirm that the Court is available for trial the week of September 14th. There is -- there are no competing trials

scheduled to begin that week.

The trial would take place in the Chief Judge's courtroom, which may not be terribly meaningful for any of you who are not very familiar with our building. But that courtroom -- the reason for that is that that courtroom is a bit larger than the other courtrooms and has been reconfigured to enable us to keep jurors separated by 6 feet and keep -- well, keep jurors, keep litigants separated by 6 feet.

So the basic reconfiguration involved essentially making half the courtroom a jury box and using the other half for counsel tables.

We did have some concern as to whether just from a standpoint of maintaining social distancing whether the room was big enough to accommodate a two-defendant trial, you know, with counsel table for each of the defendants. But we've worked that out, and that is feasible.

It is feasible with some limitations, however. Counsel at counsel table will be limited to one attorney and the defendant. Other attorneys who represent the defendant we'll have room for on the gallery benches. But they won't be able to be at counsel table in order to preserve distancing issues.

Other aspects of the process that were discussed in the memorandum that I distributed a couple of weeks ago I think, by and large, worked well. There will be minor

adjustments in terms of how things proceed. But all in all, these trials went much more smoothly than I think any of us anticipated that they would. And on that basis, I see no reason from the Court's perspective that we can't go forward with trial the week of September 14th.

So that's my very brief status report. I'm certainly happy to address any more particular or specific questions that anybody has about that.

So why don't -- I'll turn it over to Mr. Perry for the -- to begin in terms of whatever is on the government's list of agenda items to discuss. And then, of course, we'll hear from counsel for the defendants.

Mr. Perry or Mr. Young or Ms. Garthwaite.

MR. YOUNG: Your Honor --

MR. PERRY: Thank you, your Honor.

MR. YOUNG: -- this is --

Oh, I'm sorry. I'm sorry, Avi.

Your Honor, this is Brian Young speaking.

We are prepared to go forward on September 14th as planned.

Also wondering if I could ask the Court a few logistical questions if the Court would indulge.

THE COURT: Certainly.

MR. YOUNG: The first question that we have is, is it permissible for us to pass notes from lawyers in the gallery to

lawyers up at the table?

THE COURT: Sure.

MR. YOUNG: Okay. The second question we had was, does the Court have any days that it can anticipate being dark, or can the Court give us some sense of the trial day that it anticipates going forward with for this trial?

THE COURT: Certainly. And I'll preface this with also the -- as I mentioned, you know, I see no obstacle from the Court's perspective to starting trial the week of September 14th. I'll make that more specific. I see no obstacle to starting trial on September 14th.

However, the parties may want to consider a couple of things in terms of tweaking the start date, or you may not. But I throw these out for your consideration.

As I think I have mentioned in connection with needing to reschedule the pretrial conference and move that up to September 4th, I will be in Washington, D.C., the week of Labor Day, which is the week that precedes the week of September 14th. So I am going to be largely inaccessible to you that week before the trial.

That doesn't mean that folks can't be here and be checking out the courtroom and doing whatever sort of preparation -- site-specific preparation you might want to do. I'm sure we can arrange that whether I'm physically here or not.

But it did occur to me you might want to consider whether -- since we do have the leeway whether you want to start trial perhaps on September 15th as opposed to September 14th so there would be a day where if there were any issues that we wanted to try to address in advance of jury selection we could do that.

I throw that out there as I'm not suggesting it, but it's something that occurred to me.

The anticipated length of the trial might affect that. You know, if the parties are hopeful that they can get the trial completed within a week, you know, maybe you want to start on Monday to optimize that possibility. On the other hand, if you're pretty sure it's going into the second week in any event, maybe it doesn't matter as much.

All right. So with that preface, Mr. Young, jury selection I would anticipate would take the bulk of the day of the first day. In a normal world, I tell lawyers to expect to do their opening arguments on the same day. And I'll -- so I will have that same expectation here. I think it might be somewhat more likely that openings won't be able to start until the start of the second day. But I would like the lawyers to be prepared to go forward with openings on the first day if the timing of jury selection permits that.

Our standard day during the course of the trial will be essentially 9:30 or so once I deal with -- again, in normal

times, you know, there might be a couple of cases that are on call that I have to address before we get started with the jury trial. That's less likely to happen now, so I think we're much more likely to be able to start pretty promptly at 9:30 in the morning.

And we will go until or as close to 5:00 in the afternoon as makes sense. I do not go later than 5:00, so the jurors who have transportation schedules can be assured that they're going to be able to get out of here and get to their transportation.

During the course of the day, we'll normally have, obviously, a lunch break, a midmorning break, a midafternoon break. Those would be the only scheduled breaks. Of course, if there's -- if something comes up and there's some reason we have to have additional breaks for whatever reason, we can certainly do that. But that's not my anticipation.

There would be -- once we start, we go forward until we're done. There are no days that I have -- I'm unable to hold trial the week of the 14th or the 15th or -- I'm sorry -- the 21st. Whatever we need to do in that regard, we'll take care of around the trial.

So once we start, you can assume that we will go every day through the Friday of the first week and then pick up again on Monday of the second week.

Again, this isn't written in stone. If the parties

want to agree that, you know, perhaps we should start on Tuesday and if we're not done come back on the Tuesday or something, I'm not ruling that out. But in terms of normal operation, once the trial starts, we'll go forward until it's concluded.

Does that answer your question, Mr. Young?

MR. YOUNG: Yes, sir, it does.

THE COURT: Okay.

MR. YOUNG: Judge, we had one final question. I assume that the same screening procedures that the Clerk's Office used with the prior jury trials regarding asking the jurors -- the jury venire about COVID objections will be in place for our trial as well.

THE COURT: Yes, they will.

Also with respect to jury selection, we will use a questionnaire that the jurors will fill out when they report in. Copies of those will be made and distributed to counsel. And that will be the foundation of the *voir dire*. We'll follow up as appropriate and necessary based on -- first on the written responses to the questionnaire that the jurors complete that morning when they report.

Anything else?

MR. YOUNG: Okay. That's all.

THE COURT: Other questions?

MR. YOUNG: What I understand the Court to say is the

Court does not expect us to have our first witness ready to go on the day of jury selection; that our first witness, regardless of when openings happen, will happen the second day of the trial.

THE COURT: Yes.

MR. YOUNG: Is that correct, Judge?

THE COURT: Yes. To enhance the certainty and, you know, so we don't have to necessarily have somebody here ready to go on Monday and then not be able to get to them. At best, we'll get done with the openings.

I should have said, with respect to the openings as well, we won't do the openings unless both sides -- there's adequate times for both sides to give their openings. So if for some reason, you know, we have half an hour left, I'm not going to make the government open and then have the defense open the next morning. We'll just put that off until the next morning.

MR. YOUNG: Thank you, your Honor.

THE COURT: All right.

MR. PERRY: Your Honor -- your Honor, if I may. It's Avi Perry.

Just one very quick follow-up question. How long does the Court typically allow for openings?

THE COURT: Depends on the case. I mean, we can talk about that now. I don't know if the parties really -- counsel

has an idea of what they think they would like. I normally don't put people on a clock. In this case, I might. But it depends on what you tell me.

So what are you contemplating?

MR. PERRY: I think Ms. Garthwaite is going to do the opening, so I defer to her. And, you know, perhaps we might take your Honor's suggestion and confer with defense counsel to see if we can -- if we're sort of in the same ballpark as each other.

Ms. Garthwaite?

MS. GARTHWAITE: Good morning, your Honor. Leslie Garthwaite.

I would estimate needing around 20 minutes, 25 minutes at the most.

THE COURT: Okay. Well, certainly that won't be a problem.

Mr. Burlingame and Mr. McGovern, are you going to be as succinct as the government?

MR. BURLINGAME: Judge, I -- this is Mr. Burlingame.

I do not have it drafted yet, so I am not certain. I don't think we're going to go -- you know, it's not my intention or practice to have a super-long opening. But I'd be loath to tie myself down to something specific now before I'd be able to put pen to paper.

THE COURT: Sure.

MR. McGOVERN: Judge, I would say the Court can rest assured we'll be in the same ballpark as the government.

THE COURT: Okay. That's, I mean, about what I anticipated. So, you know, if we've got the jury selected by 3:30 or so, I think there ought to be ample time to get the openings done on Monday or whatever day we're going to start if the parties were looking to start on a different day.

MR. PERRY: And --

THE COURT: Go ahead.

MR. PERRY: Sorry, your Honor. It's Avi Perry.

Just one more thing. And we certainly appreciate the Court's flexibility.

At least on the government's side, your Honor, we very much would like to start on the 14th and then to go every day thereafter as the Court suggested, just in terms of bringing witnesses and, frankly, minimizing, you know, the time for something to go wrong with COVID and, you know, just in your interest in getting through trial as quickly as possible.

And I'm also just concerned on the back end. You know, after the second week, we get right into Yom Kippur, which I observe. And so, you know, I wouldn't want to start later and risk, you know, pushing the trial beyond the 25th.

So if we are able to start on the 14th and go every day thereafter, certainly that would be the government's preference.

THE COURT: Okay. All right.

Mr. Burlingame? Anything you want to throw on the table or questions you may have?

MR. BURLINGAME: We had a few more questions about logistics. And I don't know if your Honor has already thought through and decided this issue or if it's uniform as to the prior trials.

But the questions are about whether -- who would be wearing masks when. So would the lawyers be wearing masks while they're speaking? Would they be wearing masks for jury addresses? Would face shields suffice in those circumstances?

And similar questions for the defendants. Are they going to be wearing masks throughout, and would face shields suffice?

Then the other questions were is it -- I believe it is electronic exhibits only for -- that the jurors will be seeing. Would you be able to use paper exhibits with witnesses, or does everything have to be digital?

THE COURT: Everything's going to be digital in terms of the exhibits, everything that can be.

If there's something that just doesn't lend itself to that for some reason, we also -- there are alternative modes. We have an ELMO in addition to the electronic, you know, plug-ins to the system that you can use, you know, to display evidence from your computers. We also have an ELMO. So if

there are physical objects or things like that, they can be displayed on the ELMO.

And if that doesn't -- if neither of those options is necessary -- or feasible, we'll have to figure out some alternative.

What we're not going to be doing is passing around any exhibits juror to juror, certainly, or having any attorneys moving through the courtroom with the exhibits. So if there's something like that, we'll have to figure out exactly what we're going to do in that regard.

MR. BURLINGAME: Got it.

THE COURT: What was your first -- oh, masks.

MR. BURLINGAME: The masks.

THE COURT: The basic parameters will be if you are not actively involved in testifying or questioning the witness, you should have a face mask on.

And witnesses will not have face masks or face shields so that there's nothing obscuring a view of the witness while they're testifying.

Counsel who are asking questions of witnesses are permitted to remain at counsel table. So you'll be able to question witnesses from your position at counsel table, so there will be minimal movement necessary.

Again, if it's necessary to use the ELMO or something like that, you'll be able to get up. But, otherwise, the bulk

of the questioning should take place from counsel table.

And everybody in the courtroom will be masked, with the exception of somebody who is actively involved in the questioning, either on the asking the questions or answering the questions. Or, you know, at other occasions, if we're having a break and discussing an issue or things like that, whoever is involved in that dialogue will have the option of removing their mask.

But I think that's the basic ground rules.

MR. BURLINGAME: I guess the only follow-up on that would be whether with respect to the defendant there might be a face shield instead of a mask in that, you know, there's a certain loss of humanity in front of wearing the mask. If either one of them is going to be wearing a mask, I think there's --

THE COURT: Do you mean wearing --

MR. BURLINGAME: If the --

THE COURT: They would prefer to wear a face -- have a face shield at the table as opposed to a mask?

MR. BURLINGAME: Yeah.

THE COURT: I'll certainly consider that. I haven't given that any thought. I don't see why that would not be feasible at this point. I'm not ruling, but we can --

MR. BURLINGAME: Right.

THE COURT: -- we can talk about that further. That's

not something I had really thought about.

MR. BURLINGAME: Thanks, Judge.

So I think that's it for us for the trial.

I think Mr. Mazur had a few little odds and ends to put on the record and address with the Court.

THE COURT: All right. Well --

MR. MAZUR: Good morning, Judge.

THE COURT: Go ahead, Mr. Mazur.

MR. MAZUR: Oh, sorry. Good morning.

Just a few things, as Mr. Burlingame said. One is we want to put on the record that we have an agreement, I believe, with the government that barring anything going wrong, if the trial goes forward in September, Professor Venkataraman and Dr. Walton would both testify by video. And also we're -- we've been told that Mr. Jukes will not be testifying, but that Mr. Varner may be testifying in person. So I just wanted to put that on the record.

THE COURT: Okay. Does that mean, Mr. Young or Mr. Perry, that -- well, or, actually, I guess I could ask the question. There's a motion relating to Mr. Jukes, a *Daubert* motion, I believe, if my skim of the docket was correct. Is that a moot motion?

MR. PERRY: Your Honor, it's Avi Perry here.

It is. Essentially we're going to file a response saying we don't intend to call him in September, so we believe

the Court can deny that motion as moot.

If for some reason a continuance is necessary -- and I think we all hope it won't be -- you know, and the trial is postponed some number of months and the applicable, you know, travel issues no longer apply, you know, we might call him at that point. But we're all expecting to go forward in September. And we are not going to call him at trial in September.

THE COURT: Okay. Understood.

MR. PERRY: We believe the Court can deny that as moot.

THE COURT: Okay. All right.

Anything else, Mr. Mazur?

MR. MAZUR: Yes. Just a few other brief items of a similar nature.

The -- you know, with respect to the defendants' witness list, we have started some discussions with the government about potential stipulations that might eliminate the need for us to call, for example, FBI agents for impeachment purposes. But those talks are ongoing. I don't anticipate any problems there, but, obviously, we would need to put people under subpoena if we're not able to reach that kind of a stipulation.

And additionally, on Tuesday, the government informed us that it wants to use ten certificates or certifications

under Rule 902(11) to admit certain records without calling a document custodian. And on the defense side, we're just working our way through those. We think we will likely have some objections, and we would file those no later than next week if we can't resolve them. But I just want to put that on the record as well because we may have to call on the Court for that.

And then, lastly, along the same lines, we do have one outstanding Rule 17(c) subpoena that we're hoping to resolve with the third party this week. But, if not, we may need the Court's assistance also again next week to enforce -- I'm hoping that won't be necessary, but, again, I just wanted to mention it because I know people have travel schedules, and it's getting to, you know, a month before trial. And we're going to resolve everything next week, we hope.

THE COURT: Okay. Very good.

Mr. McGovern, anything from --

MR. McGOVERN: Your Honor, yes, yes. Thank you, your Honor. I don't have anything to add.

Just one clarification. With regard to jury addresses, are those, likewise, from counsel table, or will a podium be in place for the use of all counsel with regard to addressing the jury?

THE COURT: During opening statements or closing arguments?

MR. McGOVERN: Correct.

THE COURT: You know, I don't know what we -- what they did in the first trial. So I will have to check on that. And I'm also just trying to conjure up the courtroom layout. I can't answer that as we sit here. I need to -- I need to see the courtroom layout and understand what was done in the first trial.

So we'll figure that out. It will be -- whatever the rule is, it will be the same rule for both sides, obviously. And I certainly understand that counsel would prefer to be at a podium as opposed to seated at counsel table. So if that can be done consistent with, you know, COVID concerns, I'm not going to be unreasonable about that. But I want to make sure that we can do it without making jurors in particular uncomfortable.

MS. GARTHWAITE: Your Honor --

MR. McGOVERN: Understood, Judge. And you did correctly anticipate, certainly, our preference. So I appreciate that. Thank you.

THE COURT: Ms. Garthwaite.

MS. GARTHWAITE: Your Honor, this is Leslie Garthwaite. Sorry to interrupt.

I was just going to share. My understanding from the trial that took place last week is that jury addresses were delivered from counsel table but that counsel was permitted to

stand.

THE COURT: Okay. Thank you. That may well be.

All right. There was a reference to the exhibit list. And somebody had asked previously how the -- they should get that to the Court, and I had said in my proposed order inbox.

I didn't see that. It may be that that was moved by my staff someplace internal. Were the exhibit list and witness list submitted to my proposed order inbox?

MR. PERRY: Your Honor, it's Avi Perry.

Yes. I mean, I believe they were for both parties, but I think -- or I can confirm that they were. We're happy to, you know, try again.

THE COURT: Well, if I can't track them down, we'll let you know and ask you to resend them. But we should have them somewhere then.

All right. The only other thing on my agenda is I can tell you with respect to the defendants' motion to compel *Brady* and Rule 16 discovery, that motion is going to be denied, as will the associated motions to intervene by Mr. Khardori. That opinion is in the works. I will get that completed as soon as I can. But to the extent that that removes any uncertainty or question marks, I wanted to let you know that I have come to ground on that, and that motion will be denied.

All right. Anything else that we need to talk about?

MR. PERRY: I don't believe so. Not from the

government's side, your Honor.

THE COURT: All right.

MR. BURLINGAME: Not for Mr. Vorley, Judge.

THE COURT: Okay. What I'd like to --

MR. McGOVERN: Not for Mr. Chanu, Judge.

THE COURT: Okay. What I'd like to do is set another status hearing by phone in a couple of weeks just to check in. What I would propose is two weeks from today, on August 27th, at 10:00 Central daylight time. And I think it would be useful to check in then. That's about a little more than a week ahead of our pretrial conference on the 4th.

Does that date work for everybody?

MR. PERRY: Fine for the United States.

MR. McGOVERN: And for Mr. Chanu.

MR. PERRY: Your Honor, actually -- I'm sorry. It's Avi Perry again.

I did realize there's one other scheduling question that we had. I know the pretrial conference, obviously, has been moved to the 4th. *Voir dire* is due that same day. Did the Court want us to submit *voir dire* before the pretrial conference date, or is it fine to have them due on the same day? Because that initially was scheduled to be before.

THE COURT: It's fine to do it the -- that day. You know, it's not going to be that difficult to work through any *voir dire* issues.

And what I will intend to do before the pretrial conference is circulate a draft of what the Court proposes as its questionnaire that the jurors will complete. And that should help inform what you want to suggest in terms of additional *voir dire* that might be included on the written questionnaire or as follow-up.

So you should get that -- well, certainly you'll have that before the next -- our next get-together on the 27th.

MR. BURLINGAME: This is my only question. Does the Court --

COURT REPORTER: I don't know who that was.

MR. BURLINGAME: -- have the understanding that the pretrial conference on the 4th would be in person or also on the phone?

THE COURT: I'm sorry. That's Mr. Burlingame?

MR. BURLINGAME: Yeah.

COURT REPORTER: Thank you.

THE COURT: And I'm sorry. I was trying to figure out who was talking. But could you repeat --

MR. BURLINGAME: Sorry.

THE COURT: No, that's all right.

Could you repeat the question, please.

MR. BURLINGAME: I was asking whether the Court is anticipating that the pretrial conference on the 4th would be in person or if that would be a telephone conference.

THE COURT: Well, I think when we addressed that question previously, I said anyone who wants to -- if you want to appear in person, you're more than welcome to do that. And I would encourage you to do that. But I'm not sure what everybody's travel plans are. And given that there's a week intervening before the trial would start, I won't require the parties to be in Chicago on September 4th for an in-person pretrial conference.

But -- so I'll leave it up to counsel. I welcome your personal presence here, but you can participate by phone if that is more convenient.

MR. BURLINGAME: Thank you, Judge.

THE COURT: Okay. All right.

Last call for questions, comments, issues today.

All right. We'll reconvene August 27th at 10:00 Central daylight time.

Thank you. We stand adjourned.

MR. PERRY: Thank you, your Honor.

MR. BURLINGAME: Thank you, Judge.

MS. GARTHWAITE: Thank you.

(Concluded at 10:05 a.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

*/s/ LAURA R. RENKE*                         *August 14, 2020*
LAURA R. RENKE, CSR, RDR, CRR
Official Court Reporter